UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 04-60553-Civ-Marra/Seltzer

ANGELA LEE                                          )
                                                    )
          Plaintiff,                                )
                                                    )
     v.                                             )
                                                    )
RAPHAEL PEREZ, individually,                        )
JESUS ALVAREZ, individually, and                    )
KEN JENNE, as SHERIFF of BROWARD                    )
COUNTY, Florida                                     )
                                                    )
          Defendants.                               )
_____)

**NIGHT BOX
FILED**

**JUN 1 0 2004**

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

## FIRST AMENDED COMPLAINT

1.      This is a civil action seeking money damages in excess of $15,000 dollars,

exclusive of costs, interest, and attorney's fees, against RAPHAEL PEREZ, individually, JESUS

ALVAREZ, individually, and KEN JENNE, as SHERIFF of BROWARD COUNTY, Florida.

2.      Plaintiff has fully complied with all conditions precedent to bringing this

action imposed by the laws of the State of Florida, and particularly by the provisions of § 768.28

of the Florida Statutes.    (A copy of Plaintiff's "Notice Letters" and return correspondence are

attached hereto, and made a part hereof, as composite Exhibit "A.")

3.      This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the

Fourth and Fourteenth Amendments to the United States Constitution.   The United States District

Court for the Southern District of Florida has jurisdiction of this action under 42 U.S.C. § 1983, 28

U.S.C. § 1331, and 28 U.S.C. § 1343.   Plaintiff further invokes the supplemental jurisdiction of the



United States District Court to hear pendant State tort claims arising under State law, pursuant to 28 U.S.C. § 1367(a).

## PARTIES

4.      Plaintiff ANGELA LEE [hereinafter Plaintiff or Plaintiff LEE] is a citizen and resident of Broward County, State of Florida, and the United States of America.

5.      At all times referred to herein, Defendant RAPHAEL PEREZ [hereinafter PEREZ or Defendant PEREZ] was employed as a deputy sheriff for Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY, and was acting under the direction and control of Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY, in such capacity as an agent, servant and employee of KEN JENNE, as SHERIFF of BROWARD COUNTY.

6.      At all times referred to herein, Defendant JESUS ALVAREZ [hereinafter ALVAREZ or Defendant ALVAREZ] was employed as a deputy sheriff for Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY, and was acting under the direction and control of Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY, in such capacity as an agent, servant and employee of KEN JENNE, as SHERIFF of BROWARD COUNTY.

7.      Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY [hereinafter Defendant BROWARD COUNTY SHERIFF's OFFICE or Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY] is the SHERIFF of BROWARD COUNTY, Florida.  In this cause, Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY, acted through his agents, employees, and servants, including Defendant PEREZ, Defendant ALVAREZ, and others.

8.      Plaintiff sues Defendant PEREZ and Defendant ALVAREZ in their individual capacities.

2

## FACTS COMMON TO ALL COUNTS

9.     As a result of concerns arising from the AIDS epidemic in urban America, the National Institute of Health, Black Congressional Caucus, and others, caused the creation and award of federal grants to six large metropolitan areas with high HIV infection rates, including South Florida.

10.     At all times material hereto, the University of Miami School of Medicine, Division of Adolescent Medicine administered the federal grant in South Florida through a program called *"Gettin' busy?"*.

11.     At all times material hereto, the mission of *"Gettin' busy?"* was to promote HIV awareness and prevention though social marketing, prevention, outreach, counseling, testing and linkage to care for youths ages 12-24 years old.

12.     At all times material hereto, Plaintiff was certified by the State of Florida Department of Health in outreach, counseling, and testing for HIV, and was an employee of *"Gettin' busy?"* and the University of Miami School of Medicine, Division of Adolescent Medicine.

13.     At all times material hereto, Plaintiff's responsibilities included promotional activities, such as the testing of Miami-Dade County Mayor Alex Penelas for HIV, in promotion of "National HIV Testing Day." (See "Photographs," attached hereto as Exhibit "B.")

14.     The promotional strategies used by *"Gettin' busy?"* included affirmative efforts to engage youths were they congregate, such as night clubs.

15.     The promotional strategies used by *Gettin' busy?"* also included the direct distribution of promotional materials, such as stickers displaying the telephone number for the *Gettin' busy?"* website www.gettinbusyusa.com, and teen hot-line *(1-877-HIV-TEEN or 1-877-448-*

3

*7336).* (See *"Gettin' busy?"* sticker, attached hereto as Exhibit "C.")

16.     As a result of the broad-based support for *"Gettin' busy,?"* Plaintiff was increasingly invited by socially conscious club owners and promoters to appear at various events.

17.     One of Plaintiff's promotional activities on behalf of *"Gettin' busy?"* involved handing out free condoms purchased by the State of Florida, which were provided to Plaintiff in boxes of 1000 condoms each.

18.     As a result, Plaintiff became known to many of the youths who frequent South Florida night clubs as "The Condom Lady."

19.     As a marketing technique, each condom distributed by Plaintiff was packaged in what resembled a large book of matches.

20.     The front of each "match-book" facsimile was inscribed with the slogan *"Gettin busy?,"* along with the words "PUT IT ON, BEFORE YOU GET IT ON!" (See front and back of "match-book", Exhibit "D.")

21.     On the top of each "match-book" was printed "A partnership of University of Miami-Adolescent Medicine, Hope Alliance and Miami-Dade County Community Agencies."

22.     The back of each "match-book" included a cartoon-like drawing marketed towards today's youth, and the statement:  "If you're the ages of 12-24, call to find out where you can get tested year round.  It's safe, and free. 1-877-HIV-TEEN."

23.     The interior of each "match-book" contained one "LifeStyles" brand condom, as well as specific instructions on proper usage written in plain language and incorporating street slang understood by today's youths, and the interior of each "match-book" also included instructions on what to do in the event the condom was damaged or torn.  (See inside of "match-box," Exhibit

4

"E.")

24.     At all times material hereto, Henry Alvarez was the president of Ultrasound Entertainment, Inc.

25.     Henry Alvarez entered into an agreement whereby Ultrasound Entertainment, Inc., was hired to work as a promoter for the Baja Beach Club, located at 3339 North Federal Highway, Oakland Park, Broward County, Florida.

26.     On April 12, 2001, Henry Alvarez repeatedly contacted Plaintiff and urged Plaintiff to appear at the Baja Beach Club on the evening of April 12-13, 2001, to perform outreach during a teen-oriented spring break event.

27.     On the evening of April 12, 2001, Plaintiff first traveled to an adult entertainment strip club at the request of a doctor from the University of Miami, who asked Plaintiff to contact an HIV-positive dancer who worked at the club and failed to return for medical treatment for HIV.

28.     While Plaintiff was at the strip club, Henry Alvarez contacted Plaintiff and urged Plaintiff to travel to Broward County and perform outreach at the Baja Beach Club.

29.     Plaintiff was extremely tired, and declined.

30.     While Plaintiff was at the strip club, Henry Alvarez again contacted Plaintiff in an effort to persuade Plaintiff to travel to Broward County and perform outreach at the Baja Beach Club.

31.     Plaintiff again declined.

32.     After Henry Alvarez continued calling Plaintiff and would not take "no" for an answer, Plaintiff relented and traveled to the Baja Beach Club, in Fort Lauderdale.

33.    Plaintiff entered the Baja Beach Club with a box of condoms and observed a large crowd of teenagers.

34.    Plaintiff thereafter performed outreach and soon distributed all the condoms in her possession.

35.    In order to continue performing outreach, sometime between 11:00 p.m. and midnight, Plaintiff returned to her motor vehicle in the parking lot of the Baja Beach Club to retrieve additional condoms.

36.    At all times material hereto, Plaintiff's physical appearance was consistent with her chronological age of 34 years.

37.    At all times material hereto, Plaintiff appeared substantially older than the teenage patrons of the Baja Beach Club.

38.    At all times material hereto, Plaintiff carried identification from the University of Miami, School of Adolescent Medicine.

39.    At all times material hereto, Plaintiff was the Director of "Angie B. Promotions," a business engaged in promotional activities, including the promotion of recording artists.

40.    At all times material hereto, Plaintiff was engaged in promotional activities dedicated to HIV awareness in collaboration with local governmental entities, including the City of Miami and the University of Miami Jackson Memorial Hospital.

41.    As Plaintiff began to walk back towards the entrance to the Baja Beach Club, she was stopped by a youth requesting condoms.

42.    Simultaneously, Plaintiff encountered seventeen year old DJ Lex, from radio

6

station *94.5 Underground*, who was leaving the club.

      43.     Plaintiff agreed to return to her motor vehicle with DJ Lex in order to provide DJ Lex with a copy of the new "Shaggy" CD, as well as other promotional items.[1]

      44.     The youth who requested condoms from Plaintiff agreed to watch Plaintiff's condoms until Plaintiff returned from her motor vehicle.

      45.     Plaintiff thereafter returned to her motor vehicle with DJ Lex and provided DJ Lex with CDs, condoms, and other items, and thereafter began to walk back towards the entrance to the Baja Beach Club, carrying an additional box of condoms in her arms.

      46.     As Plaintiff approached the area where she had left her condoms with the youth, Plaintiff observed numerous deputy sheriffs.

      47.     Defendant ALVAREZ walked towards Plaintiff, stating: "Move back."

      48.     Plaintiff immediately stopped as Defendant ALVAREZ rapidly walked towards Plaintiff, stating "go back," upon which Defendant ALVAREZ pushed Plaintiff about the area of her shoulder, causing Plaintiff to drop the box of condoms in her possession.

      49.     At all times material hereto, Plaintiff was 5' 4" and weighed 118 lbs.

      50.     Plaintiff stated: "Don't push me, I have the right to be here.  I'm working."

      51.     As Plaintiff was speaking with Defendant ALVAREZ, Defendant PEREZ rushed towards Plaintiff, spun Plaintiff around, and physically forced Plaintiff face down onto a near-

---

[1]     D.J. Lex subsequently returned the courtesy by providing on-air promotion for the 2003 *"National HIV Testing Day, Youth Summer Jamz."* (See brochure from the 2003 *"National HIV Testing Day, Youth Summer Jamz,"* attached hereto as composite Exhibit "F.")

by police car.

52.     Plaintiff was thereafter placed under arrest for the offense of disorderly conduct, in the absence of probable cause that Plaintiff committed any criminal offense.

53.     Plaintiff was also charged with the offense of resisting arrest without violence, for conduct allegedly occurring during the course of Plaintiff's arrest, in the absence of probable cause that Plaintiff committed any criminal offense

54.     In response to the conduct of Defendant Perez and Defendant Alvarez, the youth who was watching Plaintiff's condoms began yelling: "That's the Condom Lady!  That's the Condom Lady!"

55.     Defendant PEREZ stated:  "I'm taking her to jail."

56.     Based on information and belief, the youth who was watching Plaintiff's condoms then ran into the Baja Beach club and located the promoter, Henry Alvarez.

57.     Plaintiff was then placed in a police car by Defendant ALVAREZ and transported to the front of the Baja Beach Club.

58.     Henry Alvarez exited the Baja Beach Club and spoke with several deputy sheriffs, explaining that Plaintiff was at the premises at his personal invitation and request to help protect the health and welfare of the club's teenage patrons.

59.     Plaintiff thereafter overheard a deputy sheriff speaking over a police radio channel, laughing: "Yeah, let her go.  That's the condom girl."

60.     Defendant PEREZ responded:  "No, I'm taking her ass to jail!"

61.     Plaintiff was thereafter transported to the Broward County Jail, where she was booked and incarcerated.

62.     Plaintiff was subsequently released from the Broward County Jail the afternoon of April 14, 2001 at approximately 1:30 p.m.

63.     Following Plaintiff's arrest, Defendant ALVAREZ prepared police reports for submission to prosecuting authorities which contained materially false statements and material omissions which were relied upon by prosecuting authorities for the filing of criminal charges against Plaintiff.

64.     At all times material hereto, Defendant ALVAREZ knew that his police reports would be submitted to prosecuting authorities and would be relied upon by prosecuting authorities for the filing of criminal charges against Plaintiff.

65.     The police reports prepared Defendant ALVAREZ included the following:

On 04-13-01, at approximately 0020 hrs., I responded along with several

other marked units to the parking lots of Baja Beach Club, located at 3339 N. Federal

Hwy.  Off-duty detail deputies advised that the club was full to capacity and that

people that had been turned away at the door were congregating in the parking lot.

The majority of people in the parking lot were juveniles and young adults.   These

individuals were causing a disturbance by playing loud music from their cars and

talking loudly.

Upon arrival, the deputies informed the crowd that no one would [be]

admitted into the club and that they needed to leave the area.  The suspect advised

deputies that she had been hired by the promoter to distribute condoms the club

patrons as part of a safe sex promotion.   The suspect was informed that she also

needed to leave the area.   The suspect got loud as she became verbally aggressive

9

towards deputies.  This incited some of the juveniles that were standing nearby the

incident.  Sgt. Perez #5389 advised the suspect that if she didn't leave she would be

arrested.  The suspect started shouting that she had the right to be there.  Sgt. Perez

attempted to grasp the suspect's right wrist, at which time, the suspect pulled her

hands towards her chest to prevent him from grabbing her wrists.  The suspect was

placed against a parked car at which time she was able to be handcuffed.   Suspect

TOT County Jail.  NFAT.

(See incident report of Defendant ALVAREZ, attached hereto and made a part hereof as Exhibit

"G.")

66.    The police reports prepared by Defendant ALVAREZ for submission to

prosecuting authorities contained materially false statements, insofar as the police reports prepared

by Defendant ALVAREZ falsely alleged that Plaintiff "got loud as she became verbally aggressive

towards deputies," when in fact at no time prior to Plaintiff's arrest was Plaintiff either "loud" or

"verbally aggressive" towards anyone, including Defendant PEREZ, or any other law enforcement

officer.

67.    The police reports prepared by Defendant ALVAREZ for submission to

prosecuting authorities contained materially false statements, insofar as the police reports prepared

by Defendant ALVAREZ falsely alleged that Plaintiff "incited some of the juveniles that were

standing nearby the incident," when in fact no person was "incited" by Plaintiff to cause hurt or

injury, or threaten hurt or injury, to any law enforcement officer.

68.    The police reports prepared by Defendant ALVAREZ for submission to

prosecuting authorities contained materially false statements, insofar as the police reports prepared

10

by Defendant ALVAREZ falsely alleged that "Sgt. Perez #5389 advised the suspect that if she didn't leave she would be arrested," when in fact, as Defendant ALVAREZ knew, no such warning was issued by Defendant PEREZ.

69. The police reports prepared by Defendant ALVAREZ for submission to prosecuting authorities contained materially false statements, insofar as the police reports prepared by Defendant ALVAREZ falsely alleged that Plaintiff "started shouting that she had the right to be there," when in fact at no time prior to Plaintiff's arrest did Plaintiff "shout" anything.

70. The police report prepared by Defendant ALVAREZ for submission to prosecuting authorities contained material omissions, insofar as the police reports prepared by Defendant ALVAREZ failed to indicate that Plaintiff was not amongst those individuals "causing a disturbance by playing loud music from their cars and talking loudly."

71. Based on information and belief, no disturbance, loud music, or loud talking was occurring prior to Plaintiff's arrest, insofar as such conduct was *not* tolerated by law enforcement authorities in the parking areas of the Baja Beach Club in the late night or early morning hours. (See Exhibit H, page 16 of "Grid Search" for Baja Beach Club and police reports associated with Case No.: 1-01-006350, from 23:35 hours on April 12, 2001).

72. Based on the sworn deposition testimony of Defendant Alvarez, at the time of Plaintiff's arrest on April 13, 2001, no units of the Broward County Sheriff's Office has been dispatched or summoned to the Baja Beach Club in reference to any group of persons causing a disturbance, nor were any law enforcement officers engaged in any investigation, including but not limited to any investigation associated with a lawful detention or arrest. (See Exhibit I, Deposition of Defendant Alvarez).

11

73.     Defendant Alvarez testified: "Every night, once we are getting ready to close, we know what time they are going to close . . . , and to avoid any problems from occurring, any disturbance from occurring, because the surrounding area is a residential area, we are told to go there to help the detail deputies to clear the parking lots." (See Exhibit I, Deposition of Defendant Alvarez).

74.     According to the sworn deposition testimony of Defendant Alvarez, prior to Plaintiff's arrest, there was no disturbance, and the conduct of law enforcement authorities was essentially prophylactic in nature. (See Exhibit I, Deposition of Defendant Alvarez).

75.     At all times material hereto, no "crowd" formed as a result of *Plaintiff's* conduct or the conduct of any other person, either immediately before or after Plaintiff's arrest.

76.     At all times material hereto, based on information and belief, due to the significant number of law enforcement officers in the parking lot of the Baja Beach Club prior to Plaintiff's arrest, there was no heightened concern for officer's safety as a consequence of *Plaintiff's* conduct or the conduct of any other person.

77.     At all times material hereto, there was no "unlawful assembly" (within the meaning of Florida law) in the parking lot of the Baja Beach Club either immediately before or after Plaintiff's arrest.

78.     The police report prepared by Defendant ALVAREZ for submission to prosecuting authorities contained material omissions, insofar as the police reports prepared by Defendant ALVAREZ failed to indicate that Defendant ALVAREZ and Defendant PEREZ subsequently confirmed that Plaintiff had been invited to perform outreach at the Baja Beach Club and was not amongst the teenagers congregating in the parking lot of the Baja Beach Club, playing

12

music, or talking loudly.

79.     On or about January 30, 2002, all charges filed against Plaintiff as a result of

her arrest by Defendant PEREZ were "nolle prosequied" by the Broward County State Attorney's

Office, and Plaintiff has never been convicted of any criminal offense by any prosecuting authority

as a result of her arrest by Defendant PEREZ on April 13, 2001.

80.     The conduct of Defendant PEREZ and Defendant ALVAREZ occurred under

color of state law.

### CAUSES OF ACTION

### COUNT I
### PLAINTIFF'S FOURTH AMENDMENT CLAIM AGAINST
### DEFENDANT PEREZ, INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983

For her cause of action against Defendant PEREZ, individually, in Count I, Plaintiff states:

81.     Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations

of paragraphs 1 through 80.

82.     Defendant PEREZ proximately caused Plaintiff's arrest and detention in the

absence of probable cause that Plaintiff committed any criminal offense.

83.     The conduct of Defendant PEREZ towards Plaintiff was objectively

unreasonable and violated Plaintiff's clearly established rights under the Fourth and Fourteenth

Amendments and 42 U.S.C. § 1983 to be free from arrest and detention in the absence of probable

cause.

84.     Alternatively, if Plaintiff's arrest was supported by probable cause, which it

was not, Plaintiff's arrest continued after Defendant PEREZ knew that exculpatory evidence negated

probable cause that Plaintiff committed any criminal offense.

85.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

86.     As a further direct and proximate result of the conduct of Defendant PEREZ, Plaintiff suffered loss of her liberty and freedom, mental anguish, loss of capacity for the enjoyment of life and aggravation of a previously existing condition.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's civil rights. Plaintiff also agreed to pay the undersigned attorneys a reasonable fee for their services herein.

WHEREFORE, Plaintiff prays:

a.      Judgment for compensatory damages in excess of $ 15,000 dollars;

b.      Judgment for exemplary damages;

c.      Cost of suit;

d.      Trial by jury as to all issues so triable; and

e.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT II
## PLAINTIFF'S FIRST AMENDMENT CLAIM AGAINST DEFENDANT PEREZ, INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983

For her cause of action against Defendant PEREZ, individually, in Count II, Plaintiff states:

87.     Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations of paragraphs 1 through 80.

88.     Defendant PEREZ proximately caused Plaintiff's arrest and detention in retaliation for Plaintiff engaging in words and/or acts protected by the First Amendment.

14

89.     As set forth above, prior to Plaintiff's arrest, Plaintiff stated: Plaintiff stated: "Don't push me, I have the right to be here.  I'm working," whereupon Plaintiff was placed under arrest by Defendant PEREZ.

90.     The conduct of Defendant PEREZ towards Plaintiff was objectively unreasonable and violated Plaintiff's clearly established rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983, to be free from arrest and detention by governmental authorities in retaliation for words and/or conduct protected by the First Amendment, including but not limited to what the United States Supreme Court described in *City of Houston v. Hill*, 107 S.Ct. 2502, 2510 (1987), as "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest . . . ."

91.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

92.     As a further direct and proximate result of the conduct of Defendant PEREZ, Plaintiff suffered loss of her liberty and freedom, mental anguish, loss of capacity for the enjoyment of life, and aggravation of a previously existing condition.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's civil rights. Plaintiff also agreed to pay the undersigned attorneys a reasonable fee for their services herein.

WHEREFORE, Plaintiff prays:

a.     Judgment for compensatory damages in excess of $ 15,000 dollars;

b.     Judgment for exemplary damages;

c.     Cost of suit;

        d.      Trial by jury as to all issues so triable; and

        e.      Such other relief as this Honorable Court may deem just and

appropriate.

**COUNT III**
**FALSE ARREST/FALSE IMPRISONMENT CLAIM AGAINST**
**DEFENDANT KEN JENNE, AS SHERIFF OF BROWARD COUNTY**

For her cause of action against Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY,

FLORIDA, in Count III, Plaintiff states:

        93.     Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations

of paragraphs 1 through 80.

        94.     Defendant PEREZ proximately caused Plaintiff's physical arrest and detention

in the absence of probable cause that Plaintiff committed any criminal offense.

        95.     The actions of Defendant PEREZ, in causing the arrest of Plaintiff in the

absence of probable cause, were taken in absence of lawful authority.  The actions of Defendant

PEREZ constitute false arrest/false imprisonment of Plaintiff.

        96.     Alternatively, if Plaintiff's arrest was supported by probable cause, which it

was not, Plaintiff's arrest continued after Defendant PEREZ knew that exculpatory evidence negated

probable cause that Plaintiff committed any criminal offense.  The actions of Defendant PEREZ

constitute false arrest/false imprisonment of Plaintiff.

        97.     The false arrest/false imprisonment of Plaintiff was committed by Defendant

PEREZ in the course and scope of his employment for Defendant KEN JENNE, as SHERIFF of

BROWARD COUNTY, FLORIDA.

        98.     As a direct and proximate result of the acts described above, Plaintiff has

16

suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

99.     As a further direct and proximate result of the conduct of Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY, Florida, Plaintiff suffered loss of her liberty and freedom, mental anguish, loss of capacity for the enjoyment of life,  and aggravation of a previously existing condition.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

a.     Judgment for compensatory damages in excess of $ 15,000 dollars;

b.     Cost of suit;

c.     Trial by jury as to all issues so triable; and

d.     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT IV
## PLAINTIFF'S FALSE ARREST/FALSE IMPRISONMENT CLAIM AGAINST DEFENDANT PEREZ, INDIVIDUALLY

For her cause of action against Defendant PEREZ, individually, in Count IV, Plaintiff states:

100.     Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations of paragraphs 1 through 80.

101.     Defendant PEREZ proximately caused Plaintiff's arrest and detention in the absence of probable cause that Plaintiff committed any criminal offense.

102.     The actions of Defendant PEREZ, in causing the arrest of Plaintiff in the absence of probable cause, as set forth above, were taken in absence of lawful authority.  The actions

17

of Defendant PEREZ constitute false arrest/false imprisonment of Plaintiff.

103.    Alternatively, if Plaintiff's arrest was supported by probable cause, which it was not, Plaintiff's arrest continued after Defendant PEREZ knew that exculpatory evidence negated probable cause that Plaintiff committed any criminal offense.  The actions of Defendant PEREZ constitute false arrest/false imprisonment of Plaintiff.

104.    Alternatively to the allegations set forth in Count III, if the false arrest/false imprisonment of Plaintiff by Defendant PEREZ occurred outside the course and scope of Defendant PEREZ's employment for Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY, FLORIDA, or was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, then the false arrest/false imprisonment of Plaintiff was committed by Defendant PEREZ in his individual capacity.

105.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

106.    As a further direct and proximate result of the conduct of Defendant KEN JENNE, as SHERIFF of BROWARD COUNTY, Florida, Plaintiff suffered loss of her liberty and freedom, mental anguish, loss of capacity for the enjoyment of life,  and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

        a.     Judgment for compensatory damages in excess of $ 15,000 dollars;

        b.     Cost of suit;

       c.      Trial by jury as to all issues so triable; and

       d.      Such other relief as this Honorable Court may deem just and appropriate.

**COUNT V**
**MALICIOUS PROSECUTION BY DEFENDANT ALVAREZ, INDIVIDUALLY**

For her cause of action against Defendant ALVAREZ, individually, in Count V, Plaintiff states:

107.    Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations of paragraphs 1 through 80.

108.    Defendant ALVAREZ proximately caused criminal proceedings to be instituted or continued against Plaintiff with malice and without probable cause by causing police reports to be submitted to prosecuting authorities containing false statements and/or materials omissions, which reports were relied upon by prosecuting authorities in the filing of criminal charges against plaintiff.

109.    The criminal proceedings instituted or continued by Defendant ALVAREZ reached a bona fide resolution in Plaintiff's favor.

110.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

111.    As a further direct and proximate result of the conduct of Defendant ALVAREZ, Plaintiff suffered loss of her liberty and freedom, mental anguish, loss of capacity for the enjoyment of life, and incurred attorney's fees in the defense of the charges commenced or continued against her, in violation of Plaintiff's rights. Plaintiff's losses are either permanent or

19

continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff prays:

a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

b.    Cost of suit;

c.    Trial by jury as to all issues so triable; and

d.    Such other relief as this Honorable Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

112.    Plaintiff demands trial by jury on all issues so triable as of right.

Respectfully submitted,

HUGH L. KOERNER, P.A.
Attorney for Plaintiff
100 S.E. Sixth Street
Fort Lauderdale, FL  33301
(954) 522-1235
(954) 522-1176 (Fax)
Email: hlkpa@fdn.com

By: _____
Hugh L. Koerner
Florida Bar No.: 716952

LAW OFFICES

# HUGH L. KOERNER, P.A.

100 Southeast Sixth Street
FORT LAUDERDALE, FLORIDA 33301

TELEPHONE: (954) 522-1235
FACSIMILE: (954) 522-1176

August 27, 2002

**CERTIFIED MAIL RETURN RECEIPT # 7000 0600 0023 5159 9236**

The Honorable Ken Jenne, Sheriff
Broward County Sheriff's Office
2601 W. Broward Blvd.
Fort Lauderdale, FL 33311

## NOTICE OF CLAIM PURSUANT TO § 768.28

Re:   Claimant:              Angela Lee
      Date of Loss:          April 13, 2001
      Incident Location:     3339 N. Federal Highway, Oakland Park, Florida
      Arrest No.:            OP 01-006358
      Case No.:              01-008528MM10A

Dear Mr. Jenne:

Please be advised that I represent claimant Angela Lee. The purpose of this correspondence is to serve notice of claim against Ken Jenne, as Sheriff of Broward County, Florida, pursuant to the requirements of § 768.28 of the Florida Statutes.

Angela Lee was born on April 1, 1967, in New York, New York. Ms. Lee's Social Security Number is 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. The claimant has no prior adjudicated unpaid claims in excess of two hundred ($200.00) dollars owed to the State, or any of its agencies, officers, or subdivisions.

**Statement of claim**

On April 13, 2001, claimant was invited to Baja Beach Club based upon claimant's employment with the University of Miami School of Medicine, Division of Adolescent Medicine, where claimant works on *"Gettin' Busy?,"* an AIDS campaign which includes social marketing, prevention, outreach, counseling, and testing for youths ages 13-24. *"Gettin' Busy?"* is funded by a federal grant from the National Institute of Health to six cities, including Miami, as a result of the exceptionally high AIDS rate in the South Florida market. One of claimant's work responsibilities is the promotion of safe sex, counseling, and HIV testing for youths. The campaign's strategy is to reach youths at places where they congregate.


EXHIBIT A

The Honorable Ken Jenne, Sheriff
August 27, 2002
Page 2


On April 13, 2001, claimant was dispensing condoms for *"Gettin' Busy?"* at the Baja Beach Club, at the invitation of the club.  The condoms were provided by the State of Florida to *"Gettin' Busy?,"* and claimant is certified by the State of Florida Department of Health in outreach, counseling and testing for HIV.

The claimant's job responsibilities regularly include appearing at nightclubs for the purpose of dispensing condoms.  As such, on April 13, 2001, claimant was invited to the Baja Beach Club for the purpose of dispensing condoms.  When the club was filled, Sgt. Raphael Perez ordered the parking lot of the Baja Beach Club cleared in accordance with a procedure that is apparently followed on a regular basis by members of the Broward County Sheriff's Office and detail deputies.

While Sheriff's deputies were clearing the parking lot, claimant was approached by a deputy sheriff who placed his hands on claimant's upper arms/shoulders and pushed her back.  Claimant asked: "Why are you pushing me?"  The deputy responded: "I'm trying to get everyone out of the parking lot."  Claimant explained: "I'm working here.  I'm giving out the condoms."  The deputy would not allow claimant to return to her condoms, which were contained in a large box, stating: "You are not going over there."  Claimant explained that the condoms were the property of the State of Florida.  The deputy did not care.

At that time, Sgt. Raphael Perez came over and stated:  "I'm taking your ass to jail."  Sgt. Perez pushed the claimant, causing her pocket book to fall to the ground.  The claimant was then handcuffed, placed under arrest, and seated in Deputy Jesus Alvarez' patrol car.  Deputy Alvarez testified at deposition:

> Ms. Lee was walking back towards the club, she was told that she needed to leave.  She said that she was hired by the club to -- I believe she said to hand out condoms, some safe sex thing at the club.

> She was again instructed that she needed to leave, the club was closed, and that she needed to leave the area, and at that time she said she had the right to be there, we couldn't tell her that she had to leave, and she was shouting and yelling at deputies.

According to Deputy Alvarez, the sheriff's office "had no way of verifying" whether claimant was at Baja Beach Club at the invitation of the club.

After claimant was placed under arrest, the club's promoter was notified.  The promoter contacted sheriff's deputies while claimant remained seated in a police car, and informed the deputies that claimant was at the club at the invitation and request of the club.  Sgt. Perez nevertheless refused to unarrest claimant, stating:  "No.  Take her to jail."

The Honorable Ken Jenne, Sheriff
August 27, 2002
Page 3

Following claimant's arrest for disorderly conduct and obstructing justice, claimant was charged by prosecuting authorities with the offense of "resisting arrest" without violence for allegedly "refusing to be handcuffed by pulling her arms away." The University of Miami funded claimant's defense, and the claimant's motion to dismiss was granted.

The arrest and detention of the claimant was in the absence of probable cause and in retaliation for claimant's exercise of her rights under the First Amendment, in violation of the claimant's clearly established constitutional rights. Alternatively, if the claimant's arrest was with probable cause (which it was not), claimant's detention continued after exculpatory evidence negated probable cause that claimant committed any criminal offense. The claimant's causes of action include, but are not limited to, civil rights and state tort claims for false arrest/false imprisonment, negligent hiring, training, and supervision, and malicious prosecution. Claimant's damages exceed one hundred thousand ($100,000.00) dollars.

Put simply, claimant's arrest (and the subsequent failure to unarrest) was completely reprehensible and out of step with the support by political leaders in South Florida for the University of Miami and the *"Gettin' Busy?"* campaign. Under separate cover to Kimberly Kisslan, Esq., General Counsel to Sheriff Ken Jenne, my office has forwarded a copy of this notice letter, along with copies of a newspaper article of claimant administering an HIV test to Miami-Dade County Mayor Alex Penelas during the week of "National HIV Testing Day." In addition, samples of the condoms handed out by claimant in the *"Gettin' Busy?"* campaign are enclosed, as well as a video copy of television newscasts featuring claimant administering an HIV test to Mayor Alex Penelas, on behalf of *"Gettin' Busy?."*

Sheriff Ken Jenne's arrest of the claimant demonstrates that the Sheriff of Broward County is significantly out of step with the political elite of South Florida, such as Miami-Dade County Mayor Alex Penelas, as well as with the needs of the people of South Florida. The claimant is certainly entitled to full and complete compensation as a result of her arrest. However, the claimant also invites Sheriff Ken Jenne to reexamine his position on HIV prevention and the promotion of safe sex. The claimant hopes that in the future, Ken Jenne will reverse course and will endeavor to join the claimant by becoming the point-person in Broward County for HIV prevention and the promotion of safe sex. In two weeks, claimant and Mayor Alex Penelas will be in Anaheim, California, for the United States Conference on AIDS, where Mayor Penelas will serve as keynote speaker. The claimant urges Ken Jenne to join this worthy cause.

We look forward to your response.

Very truly yours,

Hugh L. Koerner

w/enc:

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  *A BARBERA*
☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

The Honorable Ken Jenne, Sheriff
Broward County Sheriff's Office
2601 W. Broward Blvd.
Fort Lauderdale, FL  33311

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)
   7000 0600 0023 5159 9236

PS Form 3811, August 2001       Domestic Return Receipt       102595-01-M-2509

LAW OFFICES

# HUGH L. KOERNER, P.A.

100 Southeast Sixth Street
FORT LAUDERDALE, FLORIDA 33301

TELEPHONE: (954) 522-1235
FACSIMILE: (954) 522-1176

August 27, 2002

**CERTIFIED MAIL RETURN RECEIPT # 7000 0600 0023 5159 9243**

The Honorable Tom Gallagher
Insurance Commissioner
J. Edwin Larson Bldg.
Process Division Room 165
Tallahassee, FL  32399-0300

**NOTICE OF CLAIM PURSUANT TO § 768.28**

Re:  Claimant:              Angela Lee
     Date of Loss:          April 13, 2001
     Incident Location:     3339 N. Federal Highway, Oakland Park, Florida
     Arrest No.:            OP 01-006358
     Case No.:              01-008528MM10A

Dear Mr. Gallagher:

     Please be advised that I represent claimant Angela Lee.  The purpose of this correspondence is to serve notice of claim against Ken Jenne, as Sheriff of Broward County, Florida, pursuant to the requirements of § 768.28 of the Florida Statutes.

     Angela Lee was born on April 1, 1967, in New York, New York. Ms. Lee's Social Security Number is 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.  The claimant has no prior adjudicated unpaid claims in excess of two hundred ($200.00) dollars owed to the State, or any of its agencies, officers, or subdivisions.

**Statement of claim**

     On April 13, 2001, claimant was invited to Baja Beach Club based upon claimant's employment with the University of Miami School of Medicine, Division of Adolescent Medicine, where claimant works on *"Gettin' Busy?"* an AIDS campaign which includes social marketing, prevention, outreach, counseling, testing, and linkage to care for youths ages 13-24.   *"Gettin' Busy?"* is funded by a federal grant from the National Institute of Health to six cities, including Miami, as a result of the exceptionally high AIDS rates in the South Florida market.   One of claimant's work responsibilities is the promotion of safe sex, counseling, and HIV testing for youths. The campaign's strategy is to reach youths at places where they congregate.

The Honorable Tom Gallagher
August 27, 2002
Page 2

On April 13, 2001, claimant was dispensing condoms for *"Gettin' Busy?"* at the Baja Beach Club, at the invitation of the club.   The condoms were provided by the State of Florida to *"Gettin' Busy?"*, and claimant is certified by the State of Florida Department of Health in outreach, counseling and testing for HIV.

The claimant's job responsibilities regularly include appearing at nightclubs for the purpose of dispensing condoms.   As such, on April 13, 2001, claimant was invited to the Baja Beach Club for the purpose of dispensing condoms.   When the club was filled, Sgt. Raphael Perez ordered the parking lot of the Baja Beach Club cleared in accordance with a procedure that is apparently followed on a regular basis by members of the Broward County Sheriff's Office and detail deputies.

While Sheriff's deputies were clearing the parking lot, claimant was approached by a deputy sheriff who placed his hands on claimant's upper arms/shoulders and pushed her back.   Claimant asked: "Why are you pushing me?"   The deputy responded: "I'm trying to get everyone out of the parking lot."   Claimant explained: "I'm working here.  I'm giving out the condoms."   The deputy would not allow claimant to return to her condoms, which were contained in a large box, stating: "You are not going over there."   Claimant explained that the condoms were the property of the State of Florida.   The deputy did not care.

At that time, Sgt. Raphael Perez came over and stated:   "I'm taking your ass to jail."   Sgt. Perez pushed the claimant, causing her pocket book to fall to the ground.   The claimant was then handcuffed, placed under arrest, and seated deputy Jesus Alvarez' patrol car.   Deputy Alvarez testified at deposition:

> Ms. Lee was walking back towards the club, she was told that she needed to leave.   She said that she was hired by the club to – I believe she said to hand out condoms, some safe sex thing at the club.

> She was again instructed that she needed to leave, the club was closed, and that she needed to leave the area, and at that time she said she had the right to be there, we couldn't tell her that she had to leave, and she was shouting and yelling at deputies.

According to deputy Alvarez, the sheriff's office "had no way of verifying" whether claimant was at Baja Beach Club at the invitation of the club.

After claimant was placed under arrest, the club's promoter was notified.   The promoter contacted sheriff's deputies while claimant remained seated in a police car, and informed the deputies that claimant was at the club at the invitation and request of the club.   Sgt. Perez nevertheless refused to unarrest claimant, stating:   "No.  Take her to jail."

The Honorable Tom Gallagher
August 27, 2002
Page 3

Following claimant's arrest for disorderly conduct and obstructing justice, claimant was charged by prosecuting authorities with the offense of "resisting arrest" without violence for allegedly "refusing to be handcuffed by pulling her arms away."  The University of Miami funded claimant's defense, and the claimant's motion to dismiss was granted.

The arrest and detention of the claimant was in the absence of probable cause and in retaliation for claimant's exercise of her rights under the First Amendment, in violation of the claimant's clearly established constitutional rights.   Alternatively, if the claimant's arrest was with probable cause (which it was not), claimant's detention continued after exculpatory evidence negated probable cause that claimant committed any criminal offense.   The claimant's causes of action include, but are not limited to, civil rights and state tort claims for false arrest/false imprisonment, negligent hiring, training, and supervision, and malicious prosecution.  Claimant's damages exceed one hundred thousand ($100,000.00) dollars.

Very truly yours,

Hugh L. Koerner

w/enc:

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Honorable Tom Gallagher
Insurance Commissioner
J. Edwin Larson Bldg.
Process Division Room 165
Tallahassee, FL 32399-0300

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X   DEPARTMENT OF INSURANCE   ☐ Agent
    TREASURER AND FIRE MARSHAL   ☐ Addressee
    L. SNEATH, MAIL CENTER SUPERVISOR

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

AUG 29 2002

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Artic
   (Tran

PS For

102595-01-M-2509















# Put it on before you Get it on!

## Respect Yourself

and the One you're with by practicing Safe Sex....

If used properly, latex condoms are effective

against HIV infection, other sexually transmitted

diseases, and pregnancy.

ALL RIGHTS RESERVED

THE 411-
Puttin' it on-
Use a new one before each sex act.
Check the expiration date.
Check for holes or damage to the package.
If the condom is sticky or looks damaged, do not use it.
Squeeze tip of condom to remove air.
When the penis is hard (before any sexual contact),
place condom on tip of penis and roll down all the way
to base -where the hair is- (if you put it on upside
down THROW IT AWAY & USE A NEW ONE!!)
Takin' it off-
After coming (bustin'), withdraw penis while still hard.
Hold on to rim of condom as you withdraw so nothing spills.
Avoid further sexual contact with your partner until both of
you wash your sex organs and any other areas that came in
contact with body fluids.
More 411 -
Need more lube? Use K-Y Jelly®, Astro-Glide®, or some
other water-based or silicone lube..
DO NOT use oil based lubes like Vaseline®, mineral oil,
cold cream as these could cause the condom to break!
If the condom breaks or semen (cum) spills or leaks out, you
and your partner should wash wherever there was contact
with the cum.





EXHIBIT
E



# National HIV Testing Day
## YOUTH SUMMER JAMZ

## Miami-Dade Community College
Wolfson Campus Building #3
Chapman Conference Center

### JUNE 27th, 2003
1:00 - 9:00 pm

**A Collaboration between:**

Angie B. Promotions
City of Miami
and
NOT ONE MORE at UM/JMH

**Host Committee Acknowledgements**

Angie B. Promotions
City of Miami
C.O.A.C.H.I.N.
Community Health Concerns
M-D County Health Department
Mother's Voices
M.U.J.E.R.
N.B.A.C.
NOT ONE MORE at UM/JMH
Planned Parenthood
Positive Health Care
The Village
Union Positiva

**Special Thanks To**

A1A Limousine and Tour
Agouron Pharmaceuticals
Burnstein Family Foundation
Community Pharmacy
DJ AK
DJ Ben Hop
DJ Drastic
DJ Epps, *Mundo*
DJ Lex, *94.5 Underground*
DJ Mixx, *94.5 Underground*
DJ Nasty, *Club Six*
DJ Redd
Häagen Daz
Haynes
Hep C Alert
Image 2000

Jill Tracey, *99 Jamz*
LA Smooth, *Video Mix*
Levis
Miami-Dade Community College
Miami Heat
Mobile Vision
Office Depot
Papa Keith, *103 The Beat*
Sam's Club
Sony Music
South Florida Youth Foundation
Soyka
Statscript Pharmacy
Victory for Youth
Vitamalt

**Very Special Thanks To**

Angie B. Lee, *Director, Angie B. Promotions*
Samaki Variety, *Community Relations Director, City of Miami*
Gayane Stepanian, *Director of Community Affairs, NOT ONE MORE at UM/JMH*



EXHIBIT

tabbies F

# PROGRAM PART I

**1:00**PM **Participants Check In/Lunch**

**2:00**PM **Welcome:**
Jill Tracey, *99 Jamz* and
Papa Keith, *103 The Beat*

**Abstinence:**
Planned Parenthood

**Introductions:**
National HIV Testing Day

Honorable Mayor Manny Diaz,
*City of Miami*

Honorable Chair Katy Sorenson,
*Board of County Commissioners District 8*

Honorable Vice Mayor Luis R. Garcia,
*City of Miami Beach*

**Recognition:**
Angie B. Lee,
*Director, Angie B. Promotions*

Samaki Variety,
*Community Relations Director, City of Miami*

**Letting Go:**
John Delgado

**Entertainment:**
Youth Expressions

# PROGRAM PART II

**3:00**PM **Educational Workshops and Booths**

# PROGRAM PART III

**5:00**PM **A Survivor's Tale:**
Poet Anthony

**Community Involvement:**
Reverend Hardy

**5:30**PM **Music and Dinner**

**Mobile Vision Presents:**
"Bob Marley and Friends"

**6:00**PM **Rap Contest:**
Introduced by Rappers
Chino and Ransom

**6:30**PM **Latin Artist:**
T-Marie

**7:00**PM **Rap Artist:**
Midnite

**8:30**PM **Latin Rapper:**
Pit Bull

```
te/Time                                    Crimes  Management  System              Page:      1
ogrm: CMS301                                    INCIDENT  REPORT
-----------------------------------------------------------------------------------------------
ase No.: 1-01-006358 BSO DISTRICT 12 OAKLAND PARK

te of Occurrence.:  4/13/01 thru  4/13/01  Time of Occur.:   0:20 thru  0:22
te of Report.....:  4/13/01                Time of Report:  0:59
spatched.........:  4/13/01 @  0:59        Responded.....:            @  0:00
rived............:  4/13/01 @  0:59        Cleared.......:  4/13/01 @  2:37

ay of the Week...: FRIDAY                  Microflm/Roll#
ommon Name.......: BAJA BEACH CLUB
ncident Location.: 3339 N FEDERAL HWY
ncident Cty/ST/PR: OAKLAND PARK        FL              ZIP: 33334
ounty............:                                     ARREST
ocation Type.....: Parking Lot/Garage
eat Assignment...:                                     Map Ref# : 155
istrict..........: EAST DISTRICT
one/Div          : 1201 Zone
epartment Classif: Arrest:(Misdemeanor)               *OFFENSE
eporting Officer.: JESUS ALVAREZ
Incident Status..: Cleared by arrest/Patrol           Date:   4/13/01
lcohol Related...: NO
rugs Related.....: NO

*********** V E R I F I C A T I O N   I N F O R M A T I O N *****************
t Officer Review:  4/23/01  Employee: Z RECORD ENTRY ZG
pervisory Review:  4/15/01  Employee:
try Date........:  4/13/01  Employee: JESUS ALVAREZ

********************* O F F E N S E   R E P O R T S ************************

         Offense #:   1
tate UCR Classif.: Other Criminal Offense
CR Classification:
ttempt./Committed: COMMITTED
tatute Ordinance.: 877.03(1) DISORDERLY CONDUCT
heft by Computer.: NO
eason for Attack.:
CR Type of Weapon:
ntry - How/Where?:
orced Entry......:
tructure Occupcy.:                              # Premises:
vidence Collected: NO
riminal Activity.:
ocation Type.....: Parking Lot/Garage
tate Disposition.: Adult-Arrested/Held for Prosecution A
CR Incident Stat.: Cleared by Arrest; Adult          Date:  4/13/01
rrest Case #.....:  1-01-006358        # of People Arrested:  1
xcpt. Cleared Typ:
ept. UCR Offense#:

* * * * * * * * *    OFFENSE PRIMARY RELATIONSHIPS   * * * * * * * * * * *

fense #: 001 Other Criminal Offense / 877.03(1) DISORDERLY CONDUCT
  Name #....: 001 (SUSP) LEE, ANGELA R.
```

EXHIBIT

tabbies

G

```
                              Crimes Management System          Page:    2
ogrm: CMS301                     INCIDENT REPORT
------------------------------------------------------------------------
Case No.: 1-01-006358 BSO DISTRICT 12 OAKLAND PARK            (Continued)

   Name #....: 001 (VICT) STATE OF FL,

 * * * * * * * * * * *    NAME PRIMARY RELATIONSHIPS   * * * * * * * * * * *

 me #...: 001 (VICT) STATE OF FL,
    Name #....: 001 (SUSP) LEE, ANGELA R. / UNDETERMINED

:******************** P E R S O N   I N F O R M A T I O N ********************

     Suspect                              INFORMATION  #   1
 me: ANGELA R LEE                                   DOB.: 4/01/1967
 dr: 2200 N SHERMAN CIR          Apt: 203           SSN.: 591306099
 ty: Pembroke Pines      ST: FL  ZIP: 33025         Phn#: 954/282-4117
 B.: NEW YORK            ST: NY   Country: United States
 pl: STATE OF FLORIDA                               Bus#: 305/243-2175
 cp: COUNSELOR
 ce.......: Black                         Sex.: FEMALE
 hnic Org.: Black - American
 #........: L000-016-67-621-0   DL ST: FL  Country: United States
 n. Height: 505 Ft./In.      Weight: 118 lbs       Misc#:
 x. Height: 505 Ft./In.      Weight: 118 lbs
 n. Age...: 34 Max: 34

 *****************  ADDITIONAL SUSPECT INFORMATION  #   1 *******************
 air Color..: BLACK                   Length.: SHOULDER length
 air Style..: CURLY
 ye Color...: BLUE                     Glasses: NO
 omplexion..: Medium Brown             Fl.Hair:
 uild.......: Slim                     Teeth..: No Discern Features
 peech/Voice: LOUD
 lothing....- Hat..:                    Shirt: RED
             Coat.:                     Pants: RED
             Shoes: BLACK
 ody Marks#1:                         Marks#2:
     Marks#3:                         Marks#4:
 and Use....: Right Handed            NCIC#.:
 aution/Haz.:                         Weapon.:
 tate#......:                         ID #...:
 tatus......: ARRESTED                Arrest#:  1-01-006358
 arital stat: UNKNOWN                 FBI#...:

     Victim                              INFORMATION  #   1
 me:  STATE OF FL                                   DOB.:
 dr:                                                SSN.: 000000000
 ty:                      ST:     ZIP:              Phn#:
 B.:                      ST:      Country:
 pl:                                                Bus#:
 cp:
 ce.......:                               Sex.:
 hnic Org.:
 #........:                      DL ST:    Country:
```

```
ate/Time:                              Crimes Management System          Page:    3
ogrm: CMS301                             INCIDENT REPORT
--------------------------------------------------------------------------------
Case No.: 1-01-006358 BSO DISTRICT 12 OAKLAND PARK               (Continued)

in. Height: 000 Ft./In.          Weight:      lbs       Misc#:
ax. Height:     Ft./In.          Weight:      lbs
in. Age...:    Max:

****************** ADDITIONAL VICTIM INFORMATION  #   1 ********************
Victim Type..........: Other (SOCIETY)
Residence Type.......: OAKLAND PARK
Residence Status.....:
Will File Charges....: YES
Can Identify Offender: YES
Sobriety of Victim...: SOBER
Extent of Injury.....:
Injury Type #1.......:
Injury Type #2.......:
Medical Treatment....:
Hospital ID Code.....:
Land Use.............:
Caution/Hazard.......:
Weapon Held..........:
Eye Color............:
Hair Color...........:
Marital Status.......:
Physician's Name: Lst-                         Fst-

************************* N A R R A T I V E  # 2 *****************************
Original Report               Reported By: ALVAREZ, JESUS              4/13/01

   OFFENSE: DISORDERLY CONDUCT, OBSTRUCTING JUSTICE W/O VIOLENCE

   VICTIM: STATE OF FLORIDA

   SUSPECT: LEE, ANGELA R

   ON 04-13-01 AT APPROXIMATELY 0020 HRS, I RESPONDED ALONG
   WITH SEVERAL OTHER MARKED UNITS TO THE PARKING LOTS OF BAJA
   BEACH CLUB, LOCATED AT 3339 N. FEDERAL HWY. OFF-DUTY DETAIL
   DEPUTIES HAD ADVISED THAT THE CLUB WAS FULL TO CAPACITY AND
   THAT PEOPLE THAT HAD BEEN TURNED AWAY AT THE DOOR WERE CONGREGATING
   IN THE PARKING LOT. THE MAJORITY OF PEOPLE IN THE PARKING
   LOTS WERE JUVENILES AND YOUNG ADULTS. THESE INDIVIDUALS WERE
   CAUSING A DISTURBANCE BY PLAYING LOUD MUSIC FROM THEIR CARS
   AND TALKING LOUDLY.
   UPON ARRIVAL, THE DEPUTIES INFORMED THE CROWD  THAT NO ONE
   WOULD ADMITTED INTO THE CLUB AND THAT THEY NEEDED TO LEAVE
   THE AREA.THE SUSPECT ADVISED DEPUTIES THAT SHE HAD BEEN HIRED
   BY THE PROMOTER TO DISTRIBUTE CONDOMS TO THE CLUB PATRONS
   AS PART OF A SAFE SEX PROMOTION. THE SUSPECT WAS INFORMED
   THAT SHE ALSO NEEDED TO LEAVE THE AREA. THE SUSPECT GOT LOUD
   AS SHE BECAME VERBALLY AGRESSIVE TOWARDS DEPUTIES.THIS INCITED
   SOME OF THE JUVENILES THAT WERE STANDING NEARBY WATCHING
   THE INCIDENT.  SGT. PEREZ #5389 ADVISED THE SUSPECT THAT
```

```
ate/Time                         Crimes Management System          Page:    4
ogrm: CMS301                        INCIDENT REPORT
-------------------------------------------------------------------------------
Case No.: 1-01-006358 BSO DISTRICT 12 OAKLAND PARK              (Continued)
```

IF SHE DIDN'T LEAVE SHE WOULD BE ARRESTED. THE SUSPECT STARTED
SHOUTING THAT SHE HAD THE RIGHT TO BE THERE. SGT. PEREZ ATTEMPTED
TO GRASP THE SUSPECT'S RIGHT WRIST, AT WHICH TIME, THE SUSPECT
PULLED HER HANDS TOWARDS HER CHEST TO PREVENT HIM FROM GRABBING
HER WRISTS. THE SUSPECT WAS PLACED AGAINST A PARKED CAR AT
WHICH TIME, SHE WAS ABLE TO BE HANDCUFFED. SUSPECT TOT COUNTY
JAIL.NFAT

*************************** N A R R A T I V E   # 3 ***************************
C/LEE, ANGELA R            Reported By: ALVAREZ, JESUS              4/13/01

ARREST NO.:

DATE OF ARREST:  041301       TIME:   0022

CHARGES:   Disorderly Conduct          -     877.03(1)
           Obstructing Justice w/o viol  -    843.02

On 4/13/01 at approximately 0020., several BSO marked units responded
to the parking lots of the Baja Beach Club located at the above
location, reference large group causing a disturbance. Deputies
informed everyone that the club was full and that they needed to
leave the area.   The def. stated that she was hired by Baja Beach
Club to hand out condoms.  Def. was advised by Sgt. Perez #5389 that
the club was closed and that she needed to leave the area.   The def.
became loud causing a disturbance in the parking lot where there was
large groups of juveniles.  Sgt. Perez advised the def. that if she
didn't  leave immediately she would be placed under arrest.  The def.
started yelling that she had the right to be there.  Sgt. Perez
attempted to grasp the def.'s right wrist, at which time the def.
pulled both of her hands towards her chest to keep him from grabbing
her wrists.  The def. was taken into custody and TOT county jail.

LA:tcm
041601


*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

All Calls For Service At:
3339 North Federal Highway
January 1st 1999  thru  December 31st 2001

| CAD Call# | Date of Call | Time of Call | Type of Call | Address | Apt# Suite | Disposition | Report# |
|---|---|---|---|---|---|---|---|
| 010880015 | 3/29/01 | 0:55 | Area Check | 3339 N FED | HWY | CASE NUMBER.......... | 01003043 |
| 010880015 | 3/29/01 | 0:55 | Area Check | 3339 N FED | HWY | B  Details In Daily E | |
| 010880297 | 3/29/01 | 17:38 | Embzzlemnt/Fraud | 3339 N FED | HWY | CASE NUMBER.......... | 01003215 |
| 010880297 | 3/29/01 | 17:38 | Embzzlemnt/Fraud | 3339 N FED | HWY | A  WRITTEN REPORT | |
| 010890015 | 3/30/01 | 1:07 | Police Serv Call | 3339 N FED | HWY | CASE NUMBER.......... | 01003290 |
| 010890015 | 3/30/01 | 1:07 | Police Serv Call | 3339 N FED | HWY | B  Details In Daily E | |
| 010890023 | 3/30/01 | 2:12 | Narcotics Viol | 3339 N FED | HWY | CASE NUMBER.......... | 01003295 |
| 010890023 | 3/30/01 | 2:12 | Narcotics Viol | 3339 N FED | HWY | A  WRITTEN REPORT | |
| 010890119 | 3/30/01 | 10:11 | Lost/Found Prop | 3339 N FED | HWY | CASE NUMBER.......... | 01003359 |
| 010890119 | 3/30/01 | 10:11 | Lost/Found Prop | 3339 N FED | HWY | B  Details In Daily E | |
| 010900033 | 3/31/01 | 1:43 | Police Serv Call | 3339 N FED | HWY | CASE NUMBER.......... | 01003512 |
| 010900033 | 3/31/01 | 1:43 | Police Serv Call | 3339 N FED | HWY | B  Details In Daily E | |
| 010900364 | 3/31/01 | 23:30 | Trespassing | 3339 N FED | HWY | CASE NUMBER.......... | 01003742 |
| 010900364 | 3/31/01 | 23:30 | Trespassing | 3339 N FED | HWY | A  WRITTEN REPORT | |
| 010910003 | 4/01/01 | 0:14 | Area Check | 3339 N FED | HWY | CASE NUMBER.......... | 01003751 |
| 010910003 | 4/01/01 | 0:14 | Area Check | 3339 N FED | HWY | B  Details In Daily E | |
| 010910012 | 4/01/01 | 0:47 | Trespassing | 3339 N FED | HWY | CASE NUMBER.......... | 01003755 |
| 010910012 | 4/01/01 | 0:47 | Trespassing | 3339 N FED | HWY | A  WRITTEN REPORT | |
| 010910017 | 4/01/01 | 1:30 | Area Check | 3339 N FED | HWY | CASE NUMBER.......... | 01003761 |
| 010910017 | 4/01/01 | 1:30 | Area Check | 3339 N FED | HWY | B  Details In Daily E | |
| 010910020 | 4/01/01 | 1:50 | Police Serv Call | 3339 N FED | HWY | CASE NUMBER.......... | 01003763 |
| 010910020 | 4/01/01 | 1:50 | Police Serv Call | 3339 N FED | HWY | B  Details In Daily E | |
| 010980034 | 4/08/01 | 2:41 | Special Detail | 3339 N FED | HWY | B  Details In Daily E | |
| 011000014 | 4/10/01 | 1:10 | Dist Verbl/Noise | 3339 N FED | HWY | CASE NUMBER.......... | 01005705 |
| 011000014 | 4/10/01 | 1:10 | Dist Verbl/Noise | 3339 N FED | HWY | NA Non-Service Call D | |
| 011000014 | 4/10/01 | 1:10 | Dist Verbl/Noise | 3339 N FED | HWY | A  WRITTEN REPORT | |
| 011000014 | 4/10/01 | 1:10 | Dist Verbl/Noise | 3339 N FED | HWY | B  Details In Daily E | |
| 011000014 | 4/10/01 | 1:10 | Dist Verbl/Noise | 3339 N FED | HWY | B  Details In Daily E | |
| 011000148 | 4/10/01 | 10:59 | Lost/Found Prop | 3339 N FED | HWY | CASE NUMBER.......... | 01005780 |
| 011000148 | 4/10/01 | 10:59 | Lost/Found Prop | 3339 N FED | HWY | B  Details In Daily E | |
| 011020020 | 4/12/01 | 1:40 | Area Check | 3339 N FED | HWY | CASE NUMBER.......... | 01006151 |
| 011020020 | 4/12/01 | 1:40 | Area Check | 3339 N FED | HWY | B  Details In Daily E | |
| 011020353 | 4/12/01 | 23:35 | Misdemeanor | 3339 N FED | HWY | CASE NUMBER.......... | 01006350 |
| 011020353 | 4/12/01 | 23:35 | Misdemeanor | 3339 N FED | HWY | A  WRITTEN REPORT | |
| 011030004 | 4/13/01 | 0:60 | Misdemeanor | 3339 N FED | HWY | CASE NUMBER.......... | 01006358 |
| 011030004 | 4/13/01 | 0:60 | Misdemeanor | 3339 N FED | HWY | A  WRITTEN REPORT | |
| 011030014 | 4/13/01 | 2:02 | Crim Misch. VEH | 3339 N FED | HWY | CASE NUMBER.......... | 01006365 |
| 011030014 | 4/13/01 | 2:02 | Crim Misch. VEH | 3339 N FED | HWY | A  WRITTEN REPORT | |
| 011030014 | 4/13/01 | 2:02 | Crim Misch. VEH | 3339 N FED | HWY | A  WRITTEN REPORT | |
| 011040028 | 4/14/01 | 1:43 | Area Check | 3339 N FED | HWY | CASE NUMBER.......... | 01006596 |
| 011040028 | 4/14/01 | 1:43 | Area Check | 3339 N FED | HWY | B  Details In Daily E | |
| 011050032 | 4/15/01 | 2:20 | Stln Veh/Ves DEL | 3339 N FED | HWY | CASE NUMBER.......... | 01006830 |
| 011050032 | 4/15/01 | 2:20 | Stln Veh/Ves DEL | 3339 N FED | HWY | A  WRITTEN REPORT | |
| 011050041 | 4/15/01 | 2:36 | Special Detail | 3339 N FED | HWY | B  Details In Daily E | |
| 011050041 | 4/15/01 | 2:36 | Special Detail | 3339 N FED | HWY | B  Details In Daily E | |



EXHIBIT
A

```
                           Crimes Management System                    Page:    1
Progrm: CMS301                INCIDENT REPORT                        JUVENILE
-----------------------------------------------------------------------------------
  Case No.: 1-01-006350 BSO DISTRICT 12 OAKLAND PARK

Date of Occurrence.:  4/12/01 thru  4/12/01 Time of Occur.: 11:15 thru 11:15
Date of Report.....:  4/12/01               Time of Report: 15:00
Dispatched.........:  4/12/01 @ 23:35       Responded.....:          @  0:00
Arrived............:  4/12/01 @ 23:35       Cleared.......:  4/12/01 @ 23:43

  Day of the Week...: THURSDAY              Microflm/Roll#
  Common Name.......: BAJA BEACH CLUB
  Incident Location.: 3339 N FED HWY
  Incident Cty/ST/PR: OAKLAND PARK     FL           ZIP:
  County............:                                   ARREST
  Location Type.....: Bar/Nightclub
  Beat Assignment...:                            Map Ref# : 155
  District..........: EAST DISTRICT
  Zone/Div..........: 1201 Zone
  Department Classif: Narcotics                     *OFFENSE
  Reporting Officer.: NIR MORDECHAY
   Incident Status..: Cleared by arrest/Patrol      Date:   4/12/01
  Alcohol Related...: NO
  Drugs Related.....: YES

************* V E R I F I C A T I O N   I N F O R M A T I O N *****************
Rpt Officer Review:            Employee:
Supervisory Review:            Employee:
Entry Date........:  4/16/01   Employee:  T RECORD ENTRY TM

********************** O F F E N S E   R E P O R T S ***********************

         Offense #:   1
State UCR Classif.: Drugs/Narcotics
UCR Classification:
Attempt./Committed: COMMITTED
Statute Ordinance.: 893.13 POSS MARIJUANA UNDER 20 GRMS
Theft by Computer.: NO
Reason for Attack.:
UCR Type of Weapon:
Entry - How/Where?:
Forced Entry......:
Structure Occupcy.:                         # Premises:
Evidence Collected: YES
Criminal Activity.: POSSESS
Location Type.....: Bar/Nightclub
State Disposition.: Adult-NTA Issued             A
UCR Incident Stat.: Cleared by Arrest; Adult       Date:  4/12/01
Arrest Case #.....: 1-01-687859      # of People Arrested:  1
Excpt. Cleared Typ:
Rept. UCR Offense#:

****************** P R O P E R T Y   I N F O R M A T I O N ******************

      Evidence                        P R O P E R T Y  #   1
Description.....: 2 MULTICOLOR PIPES            Color:
```

Case 0:04-cv-60553-KAM Document 10 Entered on FLSD Docket 06/14/2004 Page 41 of 61

```
                          Crimes Management System        Page:    2
Progrm: CMS301                 INCIDENT REPORT
---------------------------------------------------------------------
  Case No.: 1-01-006350 BSO DISTRICT 12 OAKLAND PARK        (Continued)

  Serial Number...:                          Make.:
  Condition.......:                          Model:
    CIS Prop Type:                           Year.: 0000
  Property Type...: DRUG PARAPHERNALIA          D
  Insured (Y/N)...:                          NCIC#.:
  NCIC Entry Date.:                          NCIC Cancel Date.
  Insured By......:                          FDLE#.:
  $Value..........       $0.00    Qty:       ID #..:
  Property Damaged:
  Stolen Location.:
      City/ST/PR:
  Recovered By....: DEP MORDECHAY            $Value:          $0.00
  Recovery Locat`n:                         Date:  4/12/01
      City/ST/PR:                           Time: 11:15
  Control. Officer:
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* D R U G S   I N F O R M A T I O N \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

```
  Drug Seq. #: 001
  Activity...: POSSESS
  Drug Type..: PARAPHERNALIA/EQUIPMENT
  Quantity...:     2.000     Units: DOSE/PILL/UNIT
  $Value.....:         $2.

        Evidence                     P R O P E R T Y #   2
  Description.....: CLEAR BAG CONTAINING MARIJUANA    Color:
  Serial Number...:                          Make.:
  Condition.......:                          Model:
    CIS Prop Type:                           Year.: 0000
  Property Type...: DRUG                        D
  Insured (Y/N)...:                          NCIC#.:
  NCIC Entry Date.:                          NCIC Cancel Date.
  Insured By......:                          FDLE#.:
  $Value..........       $0.00    Qty:       ID #..:
  Property Damaged:
  Stolen Location.:
      City/ST/PR:
  Recovered By....: DEP MORDECHAY            $Value:          $0.00
  Recovery Locat`n:                         Date:  4/12/01
      City/ST/PR:                           Time: 11:15
  Control. Officer:
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* D R U G S   I N F O R M A T I O N \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

```
  Drug Seq. #: 001
  Activity...: POSSESS
  Drug Type..: MARIJUANA
  Quantity...:     1.000     Units: GRAM
  $Value.....:         $1.
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* V E H I C L E   I N F O R M A T I O N \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

```
                         Crimes Management Sys..m           Page:    3
Progrm: CMS301                INCIDENT REPORT
-----------------------------------------------------------------------
  Case No.: 1-01-006350 BSO DISTRICT 12 OAKLAND PARK        (Continued)


      Suspect Vehicle              V E H I C L E   #   1
   CIS Prop Type:
  State Veh. Type.: AUTO                      Year: 1994
  Make.: CHEVROLET         Model: CAPRICE        Permit#:
  Style:  -4 DOOR SEDAN    Color: RED         /   RED
  License#.: ROMEOJR          ST: FL   Country....: United States
  VIN/ENG#.: 1G1BL52W7RR12
  Vehicle Damaged Code:
  Damaged/Stolen Value:         $0.       Disposit`n:
  Insured (Y/N).......:                   Insured By:
  Controlling Officer.:
  Veh Feature/Oddity..:
  Keys in Vehicle.....: YES          Vehicle Locked: NO
  Lein Holder.........:
  Stolen Location.....:
        City/ST/PR...:
  NCIC#.......:                        FDLE#.:
  NCIC Ent Date:                          NCIC Can Date:
  Misc. ID #...:
  Recovered By.:
  Recovery Loc.:                                 Date:
     City/ST/PR:                                 Time:  0:00
                                                 $Value:      $0.

  Recovery Code:
  Owner Notifd.:          By Whom:

******************* P E R S O N   I N F O R M A T I O N *******************

    Suspect                       INFORMATION  #   1
 Name: DANIEL LEMUS JR                      DOB.: 12/16/1982
 Addr: 9321 DUNHILL DR                      SSN.: ████████
 City: MIRAMAR          ST: FL   ZIP: 33026  Phn#: 954/437-0028
 POB.:                  ST: FL   Country: United States
 Empl:                                      Bus#: 954/986-6905
 Occp:
 Race.......: White               Sex.: MALE
 Ethnic Org.: Caucasian
 OL #.......: L520160824560    DL ST:    Country:
 Min. Height: 000 Ft./In.      Weight:    lbs      Misc#:
 Max. Height:    Ft./In.       Weight:    lbs
 Min. Age...: 18 Max: 18

***************** ADDITIONAL SUSPECT INFORMATION  #   1 *****************
 Hair Color..: BLACK          Length.: SHORT (up to 1/2")
 Hair Style..: WAVY
 Eye Color...: HAZEL          Glasses:
 Complexion..: Fair           Fl.Hair:
 Build.......: HEAVY          Teeth..: No Discern Features
 Speech/Voice: SOFT SPOKEN
 Clothing....- Hat..:              Shirt: BLU
```

Date/Time:  6/19/03  13:27:47

```
                              Crimes Management Syst              Page:    4
Progrm: CMS301               INCIDENT REPORT
---------------------------------------------------------------------
  Case No.: 1-01-006350 BSO DISTRICT 12 OAKLAND PARK          (Continued)


              Coat.:                    Pants: BLK JEANS
              Shoes:
Body Marks#1:                      Marks#2:
     Marks#3:                      Marks#4:
Hand Use...: Right Handed           NCIC#.:
Caution/Haz.:                      Weapon.:
State#......:                      ID #...:
Status......: ARRESTED             Arrest#:  1-01-687889
Marital stat:                      FBI#...:


     Victim                        INFORMATION  #   1
Busn: STATE OF FL                       Misc#:
Addr:                                   SSN.: 000000000
City:              ST:      ZIP:         Phn#:
                                        Bus#:


******************* ADDITIONAL VICTIM INFORMATION  #   1 *******************
Victim Type..........: Other (SOCIETY)
Residence Type.......:
Residence Status.....:
Will File Charges....:
Can Identify Offender:
Sobriety of Victim...:
Extent of Injury.....:
Injury Type #1.......:
Injury Type #2.......:
Medical Treatment....:
Hospital ID Code.....:
Hand Use.............:
Caution/Hazard.......:
Weapon Held..........:
Eye Color............:
Hair Color...........:
Marital Status.......:
Physician`s Name: Lst-              Fst-


************************* N A R R A T I V E   # 1 *************************
CAD Information          Reported By:                        4/12/01

     Call#: 011020353      Beat: 1201 Zone  Alpha Shift
     Units.: U10346     Employees: 0000010346 MORDECHAY, NIR
     10-15 nta issused


************************* N A R R A T I V E   # 2 *************************
ORIGINAL NARRATIVE       Reported By: MORDECHAY, NIR          4/14/01


     On above date & time while working a police detail at 3339 No. Fed.
     Hwy., Baja Beach Club I was patrolling the parking lot.  I observed
     a 1994 red in color Caprice driving into the parking lot.  the music
     from the vehicle was extremely loud at which time I began to approach
```

Case 0:04-cv-60553-KAM   Document 10   Entered on FLSD Docket 06/14/2004   Page 44 of 61
```
                            Crimes Management System        Page:    5
Progrm: CMS301                INCIDENT REPORT
-----------------------------------------------------------------------
   Case No.: 1-01-006350 BSO DISTRICT 12 OAKLAND PARK          (Continued)
```

the vehicle to advise the driver to lower the music due to the
residents in the area.    As I made contact with the driver, later
identified by a Florida D/L, as Daniel Lemus, I smelled an extremely
strong odor of marijuana from the inside of the vehicle.   I told
Daniel to lower the music & asked him if he had any marijuana in the
vehicle. Daniel stated in a spontaneous utterance, " have no weed,
all I have is this..." as he retrieved one multi color pipe (which
was in plainview) from the open ashtray.  The pipe contained
marijuana residue which field tested positive for marijuana.  When
asked if there was anymore drugs or paraphernalia in the vehicle he
retrieved one more multicolor pipe from the glove compartment which
also contained marijuana (field tested positive) & a small clear bag
containing approx. 2 grams of marijuana (field tested positive) from
the sun visor.  Daniel was issued an NTA for possession of marijuana
& drug paraphernalia & released on scene.  The marijuana & pipes were
packaged for evidence & sent to the LAB for further analysis.

END OF NARRATIVE SECTION.

NM:tcm
041601


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

=================================================================

INCIDENT DATA:

```
Incident type (offense):    POSS. MARIJUANA OVER 20 GRAMS
Original / Supplement:      ORIGINAL
Adult / Juvenile:           ADULT
Incident date:              04/12/01
Incident time:              11:15
Date of arrest:             041201
Time of arrest:             11:30
Report date:                04/14/01
Report time:                1500
Zone:                       099

Incident location:
  Street #:                 3339
  Street direction:         N NORTH
  Street name:              FEDERAL
  Street suffix:            HY HIGHWAY
  City:                     OAKLAND PARK
  State:                    FL FLORIDA
  Zip Code:                 33334
  If business - name?:      BAJA
Incident location type:     PARKING LOT
Officer injured (Y/N):      NO

Crime Scene:
  Deputy/CCN:               10346
  Physical evidence(Y/N)    YES
  Photos (Y/N):              N
  Latents (Y/N):            NO

Summaries:
  # of offenses:            2
  # of victims:             1
  # of offenders:           1
  # of vehicles:            1
```

---------------------------------------------------------------
INVOLVED PERSON (01):

```
Person code:                VICTIM
Person type:                GOVERNMENT
Last name/business name:    STATE OF FLORIDA
```

---------------------------------------------------------------
INVOLVED PERSON (02):

```
Person code:                ARRESTEE
Person type:                ADULT
Last name/business name:    LEMUS
First name:                 DANIEL
Middle name/initial:        JR

Permanent address:
  Street #:                 9321
  Street name:              DUNHILL
  Street suffix:            DR DRIVE
  City:                     MIRAMAR
  State:                    FL FLORIDA
  Zip code:                 33026
  Phone:                    954-437-0028
Resident type:              COUNTY
Employer/school name:       BIG TIME BARBER
  Occupation/title:
  Phone:                    954-986-6905
Drug influence (Y/N):       YES
Alcohol influence (Y/N):    NO
Race:                       WHITE W
Sex:                         M
```

==================================================================================

```
Age:                          18
DOB (mm/dd/yr):               121682
Social security #:            ██████████
Driver license #:             L520160824560
NTA (Y/N):                    YES
NTA #:                        687859
Place of birth - state:       FL FLORIDA
Citizen (Y/N):                YES
   Citizenship country:       US UNITED STATES OF AMERICA
Clothing description #1:      BLUE   SHIRT
Clothing description #2:      BLACK JEANS
Height:                       600
Weight:                       220
Eye color:                    HAZEL HAZ
Hair color:                   BLACK BLK
Hair length:                  SHORT
Hair Style:                   WAVY/CURLY
Face hair:                    NONE
Complexion:                   FAIR FAR
Teeth:                        WHITE
Appearance/Demeanor:          NEAT
Speech/Voice:                 SOFT
R/L Handed:                   RIGHT
Build:                        HEAVY
Scars/Marks/Tatoos:           TT LEFT ARM
Arresting Officer(name):      MORDECHAY,NIR
   CCN #:                     10346
   Agency:                    BS
   Division:                  9

Narcotics:
   Activity 1:                POSSESS
      Qty 1:
      Unit 1:                 GRAM(S)
      Type 1:                 MARIJUANA
   Activity 2:                POSSESS
      Qty 2:                  2
      Unit 2:                 DOSE(S)/UNIT(S)
      Type 2:                 PARAPHERNALIA

Charges:
   Offense # 1                POSS. MARIJUANA UNDER 20 GRAMS
      Codes/Warrant&Bond #1   1MY         100   893.13        350A
   Offense # 2                POSS. DRUG PARAPHERNALIA
      Codes/Warrant&Bond #2   1MY         100   893.147       350B
```

--------------------------------------------------------------------------------
INVOLVED VEHICLE (01):

```
Vehicle status:               USED IN CRIME
Vehicle type:                 AUTO
Make:                         CHEVROLLET
   Model:                     CAPRICE/CAPRI(1979 AND LATER)
   Year:                      1994
   Body style:                4DR HARDTOP
   Tag registration #:        ROMEOJR
   Registration state:        FL FLORIDA
   Registration year:         2001
VIN/Hull/FAA #:               1G1BL52W7RR12
Doors locked (Y/N):           NO
Window closed (Y/N):          NO
Keys in ignition (Y/N):       YES
Color - top:                  RED
Color - bottom:               RED
Person/Vehicle link 1:        LEMUS            ,DANIEL    /AR     PERSON 02
   Person/Vehicle rel. 1:     DRIVER
```

--------------------------------------------------------------------------------
NARRATIVE:

ON ABOVE DATE AND TIME WHILE WORKING A POLICE DETAIL AT 3339 N. FED. HWY,

Case 0:04-cv-60553-KAM   Document 10   Entered on FLSD Docket 06/14/2004   Page 47 of 61

==================================================================

BAJA BEACH CLUB I WAS PATROLLING THE PARKING LOT. I OBSERVED A 1994 RED IN
COLOR CAPRICE DRIVING INTO THE PARKING LOT. THE MUSIC FROM THE VEHICLE WAS
EXTREMLY LOUD AT WHICH TIME I BEGAN TO APPROACH THE VEHICLE TO ADVISE THE
DRIVER TO LOWER THE MUSIC DUE TO RESIDENTS IN THE AREA. AS I MADE CONTACT
WITH THE DRIVER, LATER IDENTIFIED BY A FLORIDA D.L AS DANIEL LEMUS, I
SMELLED AN EXTREMELY STRONG ODOR OF MARIJUANA FROM THE INSIDE OF THE
VEHICLE. I TOLD DANIEL TO LOWER THE MUSIC AND ASKED HIM IF HE HAD ANY
MARIJUANA IN THE VEHICLE. DANIEL STATED IN A SPONTANEOUS UTTERANCE " I
HAVE NO WEED, ALL I HAVE IS THIS" AS HE RETRIEVED ONE MULTI COLOR PIPE
(WHICH WAS IN PLAIN VIEW) FROM THE OPEN ASHTRAY. THE PIPE CONTAINED
MARIJUANA RESIDUE WHICH FIELD TESTED POSITIVE FOR MARIJUANA. WHEN ASKED
IF THERE WAS ANYMORE DRUGS OR PARAPHERNALIA IN THE VEHICLE HE RETRIEVED
ONE MORE MULTICOLOR PIPE FROM THE GLOVE COMPARTMENT WHICH ALSO CONTAINED
MARIJUANA (FIELD TESTED POSITIVE) AND A SMALL CLEAR BAG CONTAINING
APPROX. 2 GRAMS OF MARIJUANA ( FIELD TESTED POSITIVE ) FROM THE SUN
VISOR. DANIEL WAS ISSUED AN N.T.A FOR POSSESSION OF MARIJUANA AND DRUG
PARAPHERNALIA AND RELEASED ON SCENE. THE MARIJUANA AND PIPES WERE
PACKAGED FOR EVIDENCE AND SENT TO THE LAB FOR FURTHER ANALYSIS.

END OF NARRATIVE SECTION

DEPUTY _____  10346  SUPERVISOR _____  4-14-01

# NOTICE TO APPEAR
IN THE COUNTY COURT OF BROWARD COUNTY, FLORIDA

## COMPLAINT No. A 687859

The Undersigned Certifies that He has just and Reasonable Grounds to Believe
and does Believe that:

Last Name _LEMUS_                                           1201

First Name _DANIEL_                    Initial _JR_

Address _9321 DUNHILL DR._

_MIRAMAR FL 33026 (437-0083)_

Birthdate _12-16-47_   Race _W_ Sex _M_ Hgt. _600 220_

Driver's License or Soc. Sec. No. _L520160874569_

on the _12_ Day of _APRIL_ 19 _2001_ at _1:15 P_ (Hour)

in the City of _ORKLAND PARK_ Broward County, Florida
did Commit the Following Offense, Contrary to Law:

_TO WIT POSS. DRUG PARAPHERN._
_POSS. MARIJUANA_



State Statute _893.13 & 893.147_ City Ordinance _____

Co-Defendant(s): _OP-01-6350_

Arresting Agency _MORDECHAY BSD_

Arresting Officer _MORDECHAY_ I.D. No. _10346_

_____
Signature of Officer

## COURT INFORMATION

Rm #

You Must Appear in County Court Located at:

_1600 W. HILLSBORO BLVD_

_DEERFIELD BCH_

on the _16_ Day of _MAY_ 19 _01_ at _1:30 PM_ (Hour)

Failure to Appear will Result in a Warrant being Issued for your Arrest.

I Hereby Agree to Appear in Court at the Time and Place Designated above to Answer
to the Offense Charged.

_____
Signature of Defendant

Original and One (1) to State Attorney
One (1) Copy to Defendant
One (1) Copy Retained by Arresting Officer     **ARRESTING OFFICER**

1

```
 1          IN THE COUNTY COURT OF THE 17TH JUDICIAL CIRCUIT
               IN AND FOR BROWARD COUNTY, FLORIDA
 2
                         MISDEMEANOR DIVISION
 3                       CASE # 01008528MM10A

 4
      STATE OF FLORIDA,
 5
      vs.
 6
      ANGELA LEE,
 7
                              Defendant.
 8
      _____/
 9

10

11          DEPOSITION OF JESUS ALVAREZ

12          Taken before NANCY SIEGEL,

13   Registered Merit Reporter and Notary Public

14   in and for the State of Florida at Large, pursuant

15   to Notice of Taking Deposition filed by the

16   Defendant in the above cause.

17                       -  -  -

18

19        ORIGINAL TRANSCRIPT

20

21

22
      Monday, July 9, 2001
23    Broward County Courthouse
      201 S.E. 6th Street            EXHIBIT
24    Room 520A                         I
      Fort Lauderdale, Florida
25    11:05 a.m. - 11:15 a.m.
```

ROYAL PALM/SPHERION REPORTING - (561) 689-0805

```
 1   Appearances:

 2        (There was no appearance by or on behalf of the
          State of Florida.)
 3

 4        On Behalf of the Defendant:

 5        LAW OFFICE OF SAM THANKACHEN
          370 W. Camino Gardens Boulevard
 6        Plaza 7, Suite 300
          Boca Raton, Florida   33432
 7        (561) 362-7778
          BY:  SAM THANKACHEN, ESQ.
 8

 9

                       —   —   —
10
                    I N D E X
11                     —   —   —

12
     WITNESS:   JESUS ALVAREZ
13
     EXAMINATION        DIRECT    CROSS    REDIRECT    RECROSS
14
     BY MR. THANKACHEN     3        --        --          --
15

16

17

18

19

20

21

22

23

24

25
```

ROYAL PALM/SPHERION REPORTING - (561) 689-0805

```
 1              P R O C E E D I N G S

 2                    - - -

 3   Thereupon,

 4                  JESUS ALVAREZ,

 5   being by the undersigned Notary Public first duly

 6   sworn, responded as follows:

 7       DIRECT EXAMINATION

 8   BY MR. THANKACHEN:

 9       Q    Officer Alvarez, please state your name and

10   I.D. number for the record.

11       A    My name is Jesus Alvarez.  My BSO number is

12   10300.

13       Q    Do you recall the incident of April 13, 2001?

14       A    Yes, I do.

15       Q    What was the reason that you were called to

16   Baja Beach Club on that day?

17       A    Every night, once the club is getting ready

18   to close, all available deputies within the district

19   are required to respond over there to help the detail

20   deputies clear the parking lots of patrons.

21       Q    What time did the club close?

22       A    On that night I'm not sure.  Usually it

23   closes between it's either 2:00 a.m. or 3:00 a.m.,

24   depending on the day of the week.

25       Q    On this day you have on your Probable Cause
```

1    Affidavit it says approximately 0020 hour.

2         A    Then that night it was probably closing at

3    about 1:00.

4         Q    1:00?

5         A    Yes, we get there early.

6         Q    Okay.  Let me ask some basic questions.  How

7    long have you been with BSO?

8         A    With the Sheriff's Office now since August of

9    2000.

10        Q    Since August of 2000?

11        A    Uh-huh.

12        Q    And this incident happened in April of 2001,

13   so I guess it was less than a year since you have been

14   with the BSO?

15        A    Uh-huh.

16        Q    What did you do before that?

17        A    Before that I worked with the Oakland Park

18   Police Department for one year.

19        Q    And before that?

20        A    Broward Sheriff's Office as a detention

21   deputy for four years.

22        Q    Okay.  What did you see when you arrived at

23   the Baja Beach Club property?

24        A    There were groups of young adults and

25   juveniles hanging out in the parking lot, as they

1    usually do, hanging out by the parked cars, and we

2    were instructed to have them leave the area as quickly

3    as possible.

4         Q    Okay.  And how many officers did you say were

5    present, if you recall?

6         A    Anywhere from six to eight deputies were out

7    there, not including the detail deputies.

8         Q    Okay.  So when you arrived at the scene, you

9    were instructed to get the juveniles off the property?

10        A    Everybody, not just the juveniles.

11        Q    Who was it that instructed you?

12        A    Sergeant Perez.

13        Q    You know I couldn't find a Sergeant Perez.

14   Is he with the BSO?

15        A    Yes, he is.

16        Q    Would you know if his number is 5389?

17        A    I believe so.

18        Q    Do you know what his first name is?

19        A    Rafael.

20        Q    Okay.  All right, let's get back to it.  So,

21   I mean, do you know who summoned you to the Baja Beach

22   Club properties, was it the owners of the property?

23        A    No, we are not summoned there.  Every night,

24   once we are getting ready to close, we know what time

25   they are going to close, and to avoid any problems

ROYAL PALM/SPHERION REPORTING - (561) 689-0805

1    from occurring, any disturbances from occurring,

2    because the surrounding area is a residential area, we

3    are told to go there to help the detail deputies clear

4    the parking lots.

5        Q    Okay.  So you are on the property, you had

6    your instructions, what happened next?

7        A    We started telling people that they needed to

8    get in their cars and leave the property.

9        Q    Okay.  And people responded?

10       A    Yes.

11       Q    Was there anybody that was defiant?

12       A    Angela Lee.

13       Q    Go ahead, let's get to that point.  You were

14   telling people to leave, they were leaving, and then?

15       A    Ms. Lee was walking back towards the club,

16   she was told that she needed to leave.  She said that

17   she was hired by the club to -- I believe she said to

18   hand out condoms, some safe sex thing at the club.

19           She was again instructed that she needed to

20   leave, the club was closed, and that she needed to

21   leave the area, and at that time she said she had the

22   right to be there, we couldn't tell her that she had

23   to leave, and she was shouting and yelling at

24   deputies.

25       Q    I mean, did you attempt to make Baja Beach

1    Club security people leave; you wouldn't, right,

2    because they work there?

3         A    They are working there, and they are at the

4    front door, they are not hanging out in the parking

5    lot.

6         Q    I mean, if an employee was in the parking lot

7    doing something that they were supposed to be doing in

8    the parking lot, how is it you go into private

9    property and tell an employee of the property to

10   leave?

11        A    She wasn't an employee of the property.

12        Q    But she said --

13        A    She said she was.

14        Q    She said she was there with permission?

15        A    We had no way of verifying it and neither did

16   she.

17        Q    You couldn't go to the door and tell them?

18        A    The door is about 500 yards away from where

19   we were at, we don't have time.

20        Q    But you had six to eight deputies, I mean

21   before forcing a person to leave the place where they

22   were working, you couldn't have somebody verify before

23   you kicked them off the property whether they were

24   doing a job?

25        A    There again, that wasn't my decision.  I

ROYAL PALM/SPHERION REPORTING - (561) 689-0805

1    wasn't the one that told Ms. Lee that she had to

2    leave.  I wasn't the one that came into contact with

3    her initially, it was Sergeant Perez.

4        Q    Okay.  How did she become loud, causing a

5    disturbance?

6        A    Yelling and screaming.

7        Q    What was she yelling and screaming?

8        A    She had the right to be there, we couldn't

9    kick her off the property, she knew her rights.

10       Q    Okay.  So now assuming she is right -- I'm

11   sorry.  Strike that.  If you were able to verify that

12   she -- with the owners or I guess the management on

13   duty that she was supposed to be there, then she would

14   have had a right to be there, correct?

15       A    I would assume so, yes.

16       Q    Okay.  And basically this loud causing a

17   disturbance, that is why you arrested her for

18   disorderly conduct?

19       A    Yes, that is why she was arrested.

20       Q    And she resisted arrest by pulling her hands

21   away?

22       A    Yes.

23       Q    Did you find out later that she was working

24   with the Baja Beach Club?

25       A    I didn't, no, I don't know if anybody else

          ROYAL PALM/SPHERION REPORTING - (561) 689-0805

9

```
 1   did.

 2       Q     Did you know that those condoms were property

 3   of the State of Florida, that she was handing them out

 4   for the State of Florida?

 5       A     No.

 6       Q     And she was working with, in conjunction with

 7   the University of Miami, Department of Health and Baja

 8   Beach Club?

 9       A     I wasn't aware of that.

10       Q     No further questions.  Thank you.  That was

11   quick, huh?

12       A     Waive.

13       Q     Would you like to read or waive?

14       A     Waive.

15             (Thereupon, at 11:15 a.m. the deposition was

16   concluded.)

17

18

19

20

21

22

23

24

25
```

1       STATE OF FLORIDA

2

3       COUNTY OF PALM BEACH

4

5           I, NANCY SIEGEL, the undersigned

6       Notary Public, in and for the State of Florida,

7       hereby certify that JESUS ALVAREZ personally

8       appeared before me and was duly sworn.

9

10          WITNESS my hand and official seal

11

12      this  11th  day of  July  , 2001.

13

14

15          _____ Nancy Siegel

16          NANCY SIEGEL

17          Notary Public, State of Florida

18          My Commission No.: CC934676

19          Expires:  May 8, 2004

20

21

22

23

24

25

ROYAL PALM/SPHERION REPORTING - (561) 689-0805

```
 1              C E R T I F I C A T E

 2     STATE OF FLORIDA

 3     COUNTY OF PALM BEACH

 4

 5          I, NANCY SIEGEL, Registered Merit Reporter,
       do hereby certify that I was authorized to and did
 6     stenographically report the foregoing deposition;
       and that the transcript is a true and correct
 7     transcription of the testimony given by the
       witness.
 8
            I further certify that I am not a relative,
 9     employee, attorney or counsel of any of the parties,
       nor am I a relative or employee of any of the
10     parties' attorney or counsel connected with the
       action, nor am I financially interested in the
11     action.

12                              th
            Dated this   11   day of  July    , 2001.
13

14              Nancy Siegel
15     NANCY SIEGEL
       Registered Merit Reporter
16

17

18

19

20

21

22

23
       The foregoing certification of this transcript
24     does not apply to any reproduction of the same
       by any means unless under the direct control
25     and/or direction of the certifying reporter.

            ROYAL PALM/SPHERION REPORTING - (561) 689-0805
```

STATE OF FLORIDA
ANGELA LEE

JESUS ALVAREZ
July 9, 2001

**0**

0020 4:1

**1**

10300 3:12
11:15 9:15
13 3:13
1:00 4:3, 4

**2**

2000 4:9, 10
2001 3:13; 4:12
2:00 3:23

**3**

3:00 3:23

**5**

500 7:18
5389 5:16

**A**

a.m 3:23, 23; 9:15
able 8:11
adults 4:24
Affidavit 4:1
again 6:19; 7:25
ahead 6:13
ALVAREZ 3:4, 9, 11
Angela 6:12
approximately 4:1
April 3:13; 4:12
area 5:2; 6:2, 2, 21
arrest 8:20
arrested 8:17, 19
arrived 4:22; 5:8
assume 8:15
assuming 8:10
attempt 6:25
August 4:8, 10
available 3:18
avoid 5:25
aware 9:9
away 7:18; 8:21

**B**

back 5:20; 6:15
Baja 3:16; 4:23; 5:21;
6:25; 8:24; 9:7
basic 4:6
basically 8:16

Beach 3:16; 4:23; 5:21;
6:25; 8:24; 9:8
become 8:4
Broward 4:20
BSO 3:11; 4:7, 14; 5:14

**C**

called 3:15
came 8:2
cars 5:1; 6:8
Cause 3:25
causing 8:4, 16
clear 3:20; 6:3
close 3:18, 21; 5:24, 25
closed 6:20
closes 3:23
closing 4:2
Club 3:16, 17, 21; 4:23;
5:22; 6:15, 17, 18, 20; 7:1;
8:24; 9:8
concluded 9:16
condoms 6:18; 9:2
conduct 8:18
conjunction 9:6
contact 8:2

**D**

day 3:16, 24, 25
decision 7:25
defiant 6:11
Department 4:18; 9:7
depending 3:24
deposition 9:15
deputies 3:18, 20; 5:6, 7;
6:3, 24; 7:20
deputy 4:21
detail 3:19; 5:7; 6:3
detention 4:20
DIRECT 3:7
disorderly 8:18
district 3:18
disturbance 8:5, 17
disturbances 6:1
door 7:4, 17, 18
duly 3:5
duty 8:13

**E**

early 4:5
eight 5:6; 7:20
either 3:23
else 8:25
employee 7:6, 9, 11
Everybody 5:10
EXAMINATION 3:7

**F**

find 5:13; 8:23
first 3:5; 5:18
Florida 9:3, 4
follows 3:6
forcing 7:21
four 4:21
front 7:4
further 9:10

**G**

groups 4:24
guess 4:13; 8:12

**H**

hand 6:18
handing 9:3
hands 8:20
hanging 4:25; 5:1; 7:4
happened 4:12; 6:6
Health 9:7
help 3:19; 6:3
hired 6:17
hour 4:1
huh 9:11

**I**

I.D 3:10
incident 3:13; 4:12
including 5:7
initially 8:3
instructed 5:2, 9, 11;
6:19
instructions 6:6
into 7:8; 8:2

**J**

JESUS 3:4, 11
job 7:24
juveniles 4:25; 5:9, 10

**K**

kick 8:9
kicked 7:23
knew 8:9

**L**

later 8:23
leave 5:2; 6:8, 14, 16, 20,
21, 23; 7:1, 10, 21; 8:2
leaving 6:14

Lee 6:12, 15; 8:1
less 4:13
long 4:7
lot 4:25; 7:5, 6, 8
lots 3:20; 6:4
loud 8:4, 16

**M**

management 8:12
many 5:4
mean 5:21; 6:25; 7:6, 20
Miami 9:7

**N**

name 3:9, 11; 5:18
needed 6:7, 16, 19, 20
neither 7:15
next 6:6
night 3:17, 22; 4:2; 5:23
Notary 3:5
number 3:10, 11; 5:16

**O**

Oakland 4:17
occurring 6:1, 1
off 5:9; 7:23; 8:9
Office 4:8, 20
Officer 3:9
officers 5:4
once 3:17; 5:24
one 4:18; 8:1, 2
out 4:25; 5:1, 6; 6:18; 7:4;
8:23; 9:3
over 3:19
owners 5:22; 8:12

**P**

Park 4:17
parked 5:1
parking 3:20; 4:25; 6:4;
7:4, 6, 8
patrons 3:20
people 6:7, 9, 14; 7:1
Perez 5:12, 13; 8:3
permission 7:14
person 7:21
place 7:21
please 3:9
point 6:13
Police 4:18
possible 5:3
present 5:5
private 7:8
Probable 3:25
probably 4:2

problems 5:25
PROCEEDINGS 3:1
properties 5:22
property 4:23; 5:9, 22;
6:5, 8; 7:9, 9, 11, 23; 8:9;
9:2
Public 3:5
pulling 8:20

**Q**

quick 9:11
quickly 5:2

**R**

Rafael 5:19
read 9:13
ready 3:17; 5:24
reason 3:15
recall 3:13; 5:5
record 3:10
required 3:19
residential 6:2
resisted 8:20
respond 3:19
responded 3:6; 6:9
right 5:20; 6:22; 7:1; 8:8,
10, 14
rights 8:9

**S**

safe 6:18
scene 5:8
screaming 8:6, 7
security 7:1
Sergeant 5:12, 13; 8:3
sex 6:18
Sheriff's 4:8, 20
shouting 6:23
six 5:6; 7:20
somebody 7:22
sorry 8:11
started 6:7
state 3:9; 9:3, 4
Strike 8:11
summoned 5:21, 23
supposed 7:7; 8:13
sure 3:22
surrounding 6:2
sworn 3:6

**T**

telling 6:7, 14
THANKACHEN 3:8
Thereupon 3:3; 9:15
told 6:3, 16; 8:1
towards 6:15

**U**

undersigned 3:5
University 9:7
Usually 3:22; 5:1

**V**

verify 7:22; 8:11
verifying 7:15

**W**

Waive 9:12, 13, 14
walking 6:15
way 7:15
week 3:24
within 3:18
work 7:2
worked 4:17
working 7:3, 22; 8:23; 9:6

**Y**

yards 7:18
year 4:13, 18
years 4:21
yelling 6:23; 8:6, 7
young 4:24